IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINDA SPRUILL, Individually and as | : | |
| personal representative of the Estate of | : | CIVIL ACTION |
| Phillip Spruill, Deceased | : | |
| | : | |
| v. | : | NO. 21-1174 |
| | : | |
| THE SCHOOL DISTRICT OF | : | |
| PHILADELPHIA and WES HEALTH | : | |
| SYSTEMS, INC. | : | |

**M E M O R A N D U M**

**Chief Judge Juan R. Sanchez**                                   **October  28 ,  2021**

Linda Spruill brings this action in her individual capacity and that of Personal Representative of her deceased son's estate against the School District of Philadelphia and WES Health Systems, Inc.  The School District has moved to dismiss Counts I, III, and V of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  Because Spruill has adequately pleaded Counts I and III and the School District is immune with respect to Count V, the Court shall grant the motion in part and deny it in part.

**FACTUAL BACKGROUND[1]**

This very tragic case arose out of the suicide of the plaintiff, Linda Spruill's 11-year-old son, Phillip on April 5, 2019.   Prior to his death, Phillip Spruill had struggled with anxiety, depression, learning disabilities and behavioral issues and had been the victim of years of bullying

---

[1] The following facts are taken from Spruill's Complaint, whose "well-pleaded factual allegations" the Court must accept as true.  *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

while a student at two Philadelphia School District elementary schools – John F. Hartranft[2] and Benjamin B. Comegys.  Phillip attended Hartranft Elementary from the first to the third grades and Comegys from third through fifth grade.  Pl's Compl., ¶ 13. At Comegys, Phillip's fellow students called him "gay," "faggot," "fat," "worthless," "ugly," and "other verbally abusive, demeaning, humiliating and derogatory terms every day." *Id.*, ¶ 16.  He "was also tripped, pushed, and otherwise physically abused by his fellow students." *Id.*

Although Spruill repeatedly attempted to get an Individualized Education Plan (IEP) in place for Phillip when he was a student at Hartranft, she did not succeed until after he transferred to Comegys at the end of the 2016-2017 school year.  As part of the evaluation process for the IEP, the "School District acknowledged that as a result of Phillip's disabilities, there was a significant risk that [he] would do himself harm." *Id.*, ¶ 15.  The District's evaluative documents further acknowledged that "Phillip's violent and disruptive behavior was the direct result of provocation by his peers." *Id.,* ¶ 17.  The IEP dictated that Phillip be placed in a small class setting and be considered for transfer to another school.  It further provided he was to receive special, one-on-one instruction and special testing, one-on-one counseling services through WES Health Systems for thirty minutes per week, and a safety plan was to be put in place beginning in 2017. *Id.,* ¶¶22, 23.  Phillip was also to receive "1500 minutes of emotional support" with the goal of teaching him "skills to manage his stress and negative feelings." *Id.*, ¶ 24.  Despite the development of the IEP at the end of the 2016-2017 school year, it was not implemented until March, 2019, when Phillip

---

[2]  Although Spruill avers that Phillip attended the John F. Hearttramp School from 1st to 3rd grade, the School District points out in its Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint that the John F. Hearttramp School does not exist.  Rather, it was the John F. Hartranft School which Phillip first attended.  Def. Mem. Of Law in Support, 4, n. 2. The Court shall therefore refer to the Hartranft School whenever necessary throughout this Memorandum Opinion.

was in the 5th grade, and then only in part. *Id.,* ¶¶ 15, 22. In the meantime, Phillip continued to be bullied and abused by other students with no intervention or protection from school or WES personnel. When he tried to protect himself, "Defendants inexplicably and repeatedly suspended Phillip for conflict with other students…" *Id.*, ¶¶ 18, 19. These policies had the effect of creating a "completely toxic, hostile and dangerous school environment for Phillip," as his "bullies felt secure in their abuse, knowing that it was Phillip that would be punished for it." *Id.,* ¶ 21.

On April 5, 2019, a visibly upset and emotional Phillip approached the WES Health Services counselor at Comegys and told her that he needed to speak with her. *Id.*, ¶ 28. The counselor, however, turned Phillip away, saying "I am handling something," and/or "I am too busy." *Id.* Phillip left school early and was found later that same day by his minor brother hanging from a belt wrapped around his neck attached to his bunk bed. His brother couldn't untie him and ran for his mother who immediately untied him and called 911. Phillip was taken to the hospital but sadly, he could not be revived and he was pronounced dead a short time later. *Id.,* ¶ 29.

Linda Spruill brings this action on her own behalf and in her capacity as Personal Representative of the Estate of her late son. The Complaint has five counts. The first three are against the School District of Philadelphia only for violations of Title IX of the Americans with Disabilities Act, § 504 of the Rehabilitation Act, and his right to equal protection of the laws and to an educational environment free from sexual harassment under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 (Counts I – III). Count IV is a common law negligence claim asserted against WES Health Services, Inc. only, and Count V asserts a wrongful death and survival claim under Pennsylvania state law against both defendants. The School District moves to dismiss Counts I, III and V in their entirety.

**STANDARDS GOVERNING MOTIONS TO DISMISS**

The general requirements for pleading a claim for relief in the federal courts are simple and straightforward.  Under Fed. R. Civ. P. 8(a), the following is required:

(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing the complaint, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in the plaintiff's favor. *Pearson v. Sec'y. Dep't. of Corrections*, 775 F.3d 598, 604 (3d Cir. 2015); *Moore v. Angie's List, Inc.,* 118 F. Supp. 3d 802, 807 (E.D. Pa. 2015).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal,* 556 U.S. at 678.

**DISCUSSION**

Spruill has adequately pled her Title IX and § 1983 claims contained in Counts I and III, respectively. The School District has statutory immunity under Pennsylvania state law for purposes

of Spruill's wrongful death claim in Count V.  The Court will therefore deny the motion with

respect to Counts I and III and grant the motion with respect to Count V.

Count I of Spruill's complaint purports to plead a cause of action for violation of Title IX

of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111, *et. seq.*  As the School District

correctly points out, however, there is no Title IX under the ADA.  The Court therefore interprets

the Complaint as pleading a cause of action in Count I under Title IX of the Education

Amendments of 1972, 20 U.S.C. § 1681, *et. seq.*,[3] as she alleges that "Phillip was effectively

barred access to educational opportunity and educational benefits in violation of Title IX" as a

result of the School District's "deliberate indifference to known acts of harassment, bullying and

abuse, so severe, pervasive, and objectively offensive within its school."  Compl., ¶ 32.

Title IX provides, with certain limited exceptions not applicable here:

> No person in the United States shall, on the basis of sex, be excluded from
> participation in, be denied the benefits of, or be subjected to discrimination under
> any education program or activity receiving Federal financial assistance …

20 U.S.C.  § 1681(a).

---

[3] In her Memorandum of Law in Opposition to the instant motion, Spruill continues to assert she
has properly pled a cause of action under the ADA in Count I.  The gist of her argument is by
failing to implement Phillip's IEP and/or develop a plan to keep him safe in school, the School
District denied him access to its educational programs and activities.  Spruill additionally asserts
because the School District is not seeking dismissal of Count II of the complaint seeking redress
under § 504 of the Rehabilitation Act, and as ADA & § 504 claims are subject to the same
analysis and may be addressed at the same time, the motion to dismiss Count I should be denied.
Pl's Mem. of Law in Opp. To Def's Mot. to Dismiss 8-10, ECF No. 14 (citing, *inter alia, Beam v.
Western Wayne Sch. Dist.*, 165 F. Supp. 3d 200, 209 (M.D. Pa. 2016)).  While these arguments
have merit where sufficient factual allegations exist to support a viable ADA claim, the Court does
not find the facts pleaded in Count I are sufficient to do so.  Thus, Count I is construed as
endeavoring to state a hostile environment harassment claim under Title IX.  *See generally, Saxe
v. State College Area Sch. Dist.*, 240 F.3d 200, 205 (3d Cir. 2001)(holding that in view of the
parallels between Title IX and Title VII, claims brought by public school students against their
schools under Title IX may also be referred to as "hostile environment harassment" actions).

"Congress enacted Title IX in 1972 with two principal objectives in mind: 'to avoid the use of federal resources to support discriminatory practices,' and to 'provide individual citizens effective protection against those practices.'" *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998) (quoting *Cannon v. University of Chicago*, 441 U.S. 677, 704 (1979)). It "was modeled after Title VII of the Civil Rights Act of 1964 … which is parallel to Title IX except that it prohibits race discrimination, and not sex discrimination, and applies in all programs receiving federal funds, not only in education programs." *Id. (citations omitted).*

Recognizing that the text of Title IX is broad, the Supreme Court has directed the courts to "accord" Title IX "a sweep as broad as its language." *N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 521 (1982). Title IX has been found to include within its reach employees of educational entities, students complaining of harassment by teachers and fellow students, and those asserting claims of retaliation for complaints of disparate treatment on the basis of sex. *See, e.g., Jackson v. Birmingham Board of Educ.*, 544 U.S. 167, 170 (2005) (retaliation); *Davis v. Monroe County Board of Educ.*, 526 U.S. 629 (1999) (student-on-student harassment); *Gebser*, 524 U.S. at 286 (teacher-student harassment); *Bell,* 456 U.S. at 521 (employees). Further, Title IX has been held to be enforceable through an implied private right of action and all appropriate remedies, including money damages, are recoverable in such suits. *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 65-66 (1992); *Cannon,* 441 U.S. at 709. Title IX private damages actions, however, are only available where recipients of federal funding had adequate notice of their potential liability for the conduct at issue. *Davis,* 526 U.S. at 640. This requires showing an official with authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf had actual knowledge of discrimination in the recipient's programs but failed to adequately

respond.  *Gebser*, 524 U.S. at 290.; *M.S. v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125-126 (3d Cir. 2020).

As noted, Title IX affords a remedy in cases alleging student-on-student sexual harassment, inasmuch as recipients of federal funding may be liable for "subjecting" their students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student harassment and the offender is under the school's disciplinary authority.  *Davis*, 526 U.S. at 646-647.  To be actionable, however, the discrimination[4] must be "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school."  *Id.,* at 650.  This determination

> … 'depends on a constellation of surrounding circumstances, expectations, and relationships, including but not limited to, the ages of the harasser and the victim, and the number of individuals involved.' … Damages are not available for simple acts of teasing and name-calling among school children, even where these comments target differences in gender. … Rather, private damages actions against the school are limited to cases in which the school 'acts with deliberate indifference to known acts of harassment,' and those acts have a 'systemic effect on educational programs and activities.'  (citations omitted).

*Saxe, supra,* 240 F.3d at 206 (quoting *Davis*, 526 U.S. at 651-653 and *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 82 (1998)).  Deliberate indifference requires both knowledge that a right is likely to be violated and a "failure to act despite that knowledge."  *M.J.G. v. School Dist. of Philadelphia*, 774 F. App'x. 736, 742-743 (3d Cir. 2019) (quoting *S.H. ex rel. Durrell v. Lower Merion Sch. District*, 729 F.3d 248, 265 (3d Cir. 2013)).

---

[4]   The Third Circuit has determined that the burden of proof in such "hostile environment harassment" cases is the disjunctive:  to prevail, a plaintiff needs to establish that the harassment was "so severe, pervasive **or** objectively unreasonable" that it "so undermines and detracts from the victim's educational experience that he or she is effectively denied equal access to the institution's resources or opportunities."  *Doe v. Boyertown Area Sch. Dist.*, 897 F. 3d 518, 533 (3d Cir. 2019) (emphasis added).

Count I of the complaint adequately states a cause of action under Title IX.  Specifically, Spruill alleges Phillip's fellow students bullied him every day by calling him "gay," "faggot," "worthless," "ugly" and "other verbally abusive, demeaning, humiliating and derogatory terms." He was "also tripped, pushed and otherwise physically abused by his fellow students."  Compl., ¶ 16.  The allegations that Phillip was accused of being "gay" and a "faggot" plausibly allege gender stereotyping harassment, *i.e.,* that Phillip was harassed and punished because he failed to conform with how his abusers thought a boy should look, speak and act, and the complaint therefore adequately pleads Phillip was harassed on the basis of sex.  *See, e.g., Price Waterhouse v. Hopkins*, 490 U.S. 228, 250-251 (1989)(recognizing that where employer denies employee partnership because it believes employee should behave or dress in a manner stereotypical of gender, employer has acted on the basis of gender within meaning of Title VII); *Prowell v. Wise Business Forms*, 579 F.3d 285, 290 (3d Cir. 2009) (holding plaintiff had adduced sufficient evidence of Title VII violation under gender stereotyping theory by showing harassment on basis of neatness of clothing and nails, effeminate manner of sitting, interests and lack of interest in beer drinking, hunting, sports, etc.).

The Complaint goes on to allege the bullying and abuse of Phillip occurred during school hours and on school district property and over the course of several years.  Compl., ¶¶ 13, 34.  In response, Phillip is alleged to have exhibited "violent and disruptive behavior," to which the School District responded by suspending Phillip for conflict with other students.  Compl., ¶¶ 17-18.   Spruill avers that each time this happened, she called the school to communicate that Phillip's outbursts were the product of the bullying endured by her son and that the school was "undeniably aware" of what was going on as reflected in its own evaluative documents which acknowledged "Phillip's violent and disruptive behavior was the direct result of provocation by his peers" and

the "significant risk that Phillip would do himself harm."  Compl., ¶¶ 15, 17-19.  The Complaint thus pleads the School District had ample notice of what was happening to Phillip and ample opportunity to remedy the harassment and prevent it from continuing.  It is entirely plausible therefore, that the School District deliberately disregarded the harassment and abdicated its responsibilities to Phillip is entirely plausible, and that Phillip was thereby deprived of the educational opportunities and activities offered in its schools.  Compl., ¶¶ 33-34.  Count I of the complaint thus states a cause of action under Title IX of the Educational Amendments of 1972 and the District's motion to dismiss Count I is denied.

Spruill has also adequately pleaded in Count III her claim pursuant to 42 U.S.C. § 1983 for violation of Phillip's right to substantive due process under the Fourteenth Amendment.

Section 1983 imposes civil liability only upon one "who under color of any statute, ordinance, regulation, custom, or usage of any State or Territory, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws…." *Baker v. McCollan*, 443 U.S. 137, 139 (1979) (quoting 42 U.S.C. §1983).  To state a claim under §1983, a plaintiff must allege that he or she was deprived of a constitutionally protected right by the conduct of a person acting under color of state law.  *Nicini v. Mora*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc).  While local governing bodies may be sued directly under §1983 for monetary, declaratory or injunctive relief, a local government may not be sued under §1983 for an injury inflicted solely by its employees or agents.  *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 690, 694,  (1978).  Rather, it is only when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the municipal entity itself, that such a cause of action will lie.  *Id.*  "Official

municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson,* 563 U.S. 51, 61 (2011) (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 480-481, (1986)).   Thus, it is only when "the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation" that Section 1983 liability may attach.  *Id*.; *Butler v. Lamont*, 732 F. App'x. 125, 126-127 (3d Cir. July 26, 2018).

The first step in evaluating a § 1983 claim is to identify the exact contours of the underlying right said to have been violated, and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all.  *Chavarriaga v. N.J. Dep't of Corrections*, 806 F.3d 210, 222 (3d Cir. 2015).  The Fourteenth Amendment provides in pertinent part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty, or property, without due process of law…"  It has been said "the Due Process Clause … was intended to prevent government from abusing its power or employing it as an instrument of oppression."  *Collins v. City of Harker Heights*, 503 U.S. 115, 126 (1992) (quoting *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 196 (1989)).  The substantive component of the due process clause has been held to protect individual liberty against "certain government actions regardless of the fairness of the procedures used to implement them."  *Id., at 125.*  It is phrased as a limitation on the State's power to act and not as a guarantee of certain minimal levels of safety and security and therefore, it does not generally impose an affirmative obligation upon states to protect individuals from the harmful actions of private citizens.  *See, DeShaney,* 489 U.S. at 195, 196.

There are, however, two very narrow exceptions to this general rule.  The first, which has come to be known as the "special relationship" exception was carved out by the Supreme Court in

*Deshaney*. *Morrow v. Balaski,* 719 F.3d 160, 167 (3d Cir. 2013). It holds that a special relationship is formed when the State takes a person into its custody and holds him there against his will. *Id.* That exception is not applicable here.

Additionally, in this Circuit there exists a second exception: the so-called "state-created danger" exception. *Kniepp v. Tedder*, 95 F.3d 1199, 1201 (3d Cir. 1996). This exception arises to impose an affirmative duty to protect if the state's own actions create the very danger that causes the plaintiff's injury. *Morrow*, *supra*. To successfully plead a state-created danger claim, the following elements are required:

1. the harm ultimately caused was foreseeable and fairly direct;

2. a state actor acted with a degree of culpability that shocks the conscience;

3. a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or was a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

4. a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*L.R. v. School District of Phila.,* 836 F.3d 235, 242 (3d Cir. 2016) (citing *Bright v. Westmoreland County*, 443 F.3d 276 (3d Cir. 2006)). The level of culpability required for behavior to shock the conscience largely depends on the context in which the action takes place. *Id.*, at 246. In situations "where deliberation is possible and officials have the time to make unhurried judgments," deliberate indifference is sufficient. *Id.* (quoting *Sanford v. Stiles,* 456 F.3d 298, 309 (3d Cir. 2006) (per curiam).

In recent years, the Third Circuit has had occasion to consider the application of the special relationship and state-created danger exceptions in the context of the public schools. In so doing, it has considered and rejected the argument that Pennsylvania's compulsory school attendance

laws and the schools' exercise of *in loco parentis* authority over its students so restrain their liberty that they can be considered to be in "state custody" during the school day.[5]

Spruill has alleged sufficient background facts to survive dismissal at the pleading stage with regard to her claim under the state-created danger exception.  To reiterate, the complaint avers Phillip was a disabled student with a known history of anxiety, depression, and reactive disruptive behavior as a result of provocation by his peers, who was at  "significant risk" of harming himself.  Compl., ¶¶ 13, 15, 17. The School District is alleged to have been well aware that Phillip was repeatedly bullied and harassed both verbally and physically.  Compl., ¶¶ 16, 17, 19.  Instead of taking action against the students who were harassing and bullying Phillip, however, the School District is alleged to have further emboldened and empowered those students by punishing and suspending Phillip.[6]  In so doing, the School District is accused of creating "a completely toxic,

---

[5] Noting it is the parents who decide whether state-mandated education will take place in the home, in public, private or vocational school and that even when enrolled in public school, parents retain the discretion to remove the child from classes when they see fit, the Third Circuit held the school defendants' authority over the plaintiff during the school day did not create the type of physical custody necessary to bring it within the definition of special relationship noted in *DeShaney*.  *D.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364, 1370-1372 (3d Cir. 1992).

[6]  The School District also argues Spruill's complaint fails to state a  § 1983 claim against it insofar as it fails to allege that an official policy, custom or practice on its part caused the harm suffered.  To the contrary, the District submits that it has "issued numerous policies, published publicly, which touch on the issues of bullying and harassment in schools" and it has "extensive anti-bullying policies."  Def's Mem. of Law in Support of Mot. to Dismiss, ECF No. 12, p. 10, 11.  In further support, the District has attached copies of several of these policies to its legal memoranda.

   Policies, however, are not always effective nor are they always followed.  Because this case is still only in the pleadings phase, the Court finds this issue is better addressed following the completion of discovery.  In the event there is no evidence the policy was ineffective or that there was an informal custom or practice in the District of not following it, the District would be well advised to file a motion for summary judgment.  *See, e.g., Hudson v. Michigan*, 547 U.S. 586, 599 (2006) ("Failure to teach and enforce constitutional requirements exposes municipalities to financial liability.");  *City of Canton v. Harris*, 489 U.S. 378, 386-387 (1989) (rejecting argument that municipal liability can be found only where the policy in question is

hostile and dangerous school environment for Phillip." Compl., ¶¶ 18, 20, 21. As explained in *L.R., supra,* in evaluating whether a state actor has affirmatively used his or her authority in a way that created a danger to the citizen or rendered the citizen more vulnerable to danger than had the state not acted at all, it is useful to consider the "setting or the 'status quo' of the environment before the alleged act or omission occurred, and then to ask whether the state actor's exercise of authority resulted in a departure from the status quo." *L.R.,* 836 F.3d at 243. Viewed in this light, the School District purportedly made the school environment more dangerous, hostile and toxic for Phillip by suspending and punishing *him*, rather than his victimizers. As a result of his experiences and having nowhere to turn for relief as even his counselor rebuffed him, Phillip foreseeably took his own life.

The elements needed to state a claim under the state-created danger theory have thus been plausibly pled. Insofar as this case is at the pleading stage and it remains to be seen whether evidence of these facts can be elicited, the plaintiff is entitled to the opportunity to do so. The motion to dismiss Count III is therefore denied.

Finally, the Court will dismiss Count V because the School District is entitled to governmental immunity. Count V alleges a cause of action against the School District pursuant to Pennsylvania's Wrongful Death and Survival Act, 42 Pa. C. S. A. § 8301, *et. seq.* Under the Act,

> (a) An action may be brought … to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful act or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery.

42 Pa. C.S.A. § 8301(a).

---

itself unconstitutional and recognizing that failure to train may give rise to *Monell* claim under § 1983).

Spruill contends the School District's disregard of the bullying and harassment which Phillip was suffering, his need for counseling and other services outlined in his IEP, and its failure to implement his IEP and protect Phillip "were substantially more than ordinary carelessness, inadvertence, laxity or indifference, but rather [was] deliberate indifference and willful misconduct…" Compl., ¶¶ 52, 54, 55.

The Philadelphia School District is a local agency within the meaning of the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. C. S. § 8541,[7] *et. seq.,* and is generally immune from tort liability thereunder. *Wells v. Harrisburg Area Sch. Dist.*, 884 A. 2d 946, 948 (Pa. Commw. Ct. 2005). There are, however, nine specific exceptions to this general grant of immunity for certain types of negligent[8] acts. 42 Pa. C. S. § 8542(a)(2). These include: vehicle liability, care, custody or control of personal property, real property, trees, traffic controls and street lighting, utility service facilities, streets, sidewalks, care, custody or control of animals, and sexual abuse. § 8542(b)(1) – (9).

Where, as here, the actions alleged to have been taken by the school district are intentional or willful and not negligent, none of the exceptions to immunity apply. *Klump v. Nazareth Area Sch. Dist.,* 425 F. Supp. 2d 622, 636 (E.D. Pa. 2006); *Joyner v. Sch. Dist. of Phila.*, 313 F. Supp. 2d 496, 504 (E.D. Pa. 2004). The School District therefore retains its immunity from suit for the wrongful death claim in Count V and it is therefore properly dismissed against it.

---

[7] Section 8541 reads:

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or employee or any other person.

[8] As used here, "'negligent acts' [do] not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct." 42 Pa. C. S. § 8542(a)(2).

14

**CONCLUSION**

Spruill has plausibly pleaded her claims.  The School District, however, is immune with respect to Count V.  The School District's motion to dismiss is therefore granted in part and denied in part.  Count V of the Complaint is dismissed.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sanchez
_____
Juan R. Sanchez,        C.J.

15